UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                           CRIMINAL ACTION NO. 3:19-CR-20-CRS

VICTOR MANUEL QUIJADA-CASTILLO                                    DEFENDANT

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court for consideration of a motion of the defendant, Victor
Manuel Quijada-Castillo, *pro se*, seeking a reduction of his term of imprisonment after
recovering from infection with the COVID-19 virus (DN 87). Quijada-Castillo is presently
serving a 120-month sentence for drug trafficking. He is confined at the Federal Correctional
Institution ("FCI") Victorville II.

On September 12, 2020, the defendant filed a request for compassionate release with
Warden Gutierrez who denied his request on March 3, 2021. (DN 91-3). In December 2020
while his request for compassionate release was pending, Quijada-Castillo contracted COVID-19
purportedly from a staff member. DN 87, p. 3. He contends that he "was made to suffer
intensely, physically and mentally. Moreover, he now faces a substantial risk of future
complications to his heart, lungs and health." *Id.*

The United States has indicated that the defendant has exhausted his administrative
remedies, but objects to the motion on the merits (DN 91).

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 142,238,073 confirmed cases worldwide and 3,032,124 deaths; in the United States, there are 31,350,025 confirmed cases and 561,921 deaths.[3] Further elaboration concerning the seriousness of the COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons where outbreaks can yield catastrophic result is apparent. However, the developments in the fight against the coronavirus are rapidly evolving worldwide and we must address each inmate's situation individually in the context currently presented when considering requests for compassionate release.  Suffice it to say that the Court addresses motions for compassionate release, and Quijada-Castillo's motion in particular here, with the gravity of the situation in mind.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s- openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited April 21, 2021).

defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."   18 U.S.C. § 3582(c)(1)(A).

The United States has acknowledged the defendant's request to the warden and a lapse of more than thirty days since he made that request.  The United States having waived any objection to Quijada-Castillo's exhaustion of administrative remedies, we deem him to have exhausted and proceed to consider his motion. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison."); *United States v. Bolze*, No. 3:09-CR-093-TAV-CCS-1, 2020 WL 6151561 (E.D.Tenn. Oct. 20, 2020)(stating that "reasonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden." *Id.* at *4.  "[A]lthough the Sixth Circuit has yet to encounter the issue presented here, it implied it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden," *quoting Alam*, 960 F.3d at 834).

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (2) is experiencing a serious deterioration in physical or mental health because of the aging process; and (2i) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

4

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id.* We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his request to the warden, the defendant sought compassionate release on the ground that his health conditions – a stroke, having had his gall bladder removed, and bronchitis – rendered him a greater risk of death should he become infected with COVID-19. DN 91-4. The warden denied his request under Program Statement No. 5050.50 indicating that the defendant failed to meet the criteria for compassionate release as he is "a 56 year old male with a medical care level 1, healthy simple chronic care. [His] case was reviewed and it was determined that [his] medical condition is not terminal or debilitating." DN 91-3.

With respect to the defendant's concern that he faces the potential for infection, or at this juncture, reinfection with the COVID-19 virus in the facility, we note that as of this writing, the

Bureau of Prisons website (https://www.bop.gov) reports no cases of COVID-19 either among the inmates or the staff at FCI Victorville II.  Further, of 1,090 total inmates in the complex, 985 have been fully vaccinated, including Quijada-Castillo.  Thus, the defendant's original basis for a finding an extraordinary and compelling reason for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i) appears moot, as the circumstances have now changed.  The prevalence of COVID-19 at FCI Victorville II and risks associated with exposure to the virus were the sole basis for his request to the warden, and the risk of exposure is now virtually nil and defendant has chosen to protect himself from serious illness by receiving the COVID-19 vaccination.

However, the motion for reduction of sentence that Quijada-Castillo has now filed with this Court is not the proper subject of a motion for compassionate release.  His motion alleges that he was subjected to conditions, including the actual exposure to COVID-19, that constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution.  He describes mental and physical suffering as well as an increased risk of future medical complications from the virus.  He cites 18 U.S.C. § 3582 and couches his mistreatment as "extraordinary and compelling," but he supports his Eighth Amendment allegations with citations to cases such as *Helling v. McKinney*, 509 U.S. 25, 32 (1993), a case brought under 42 U.S.C. § 1983 alleging the violations of the plaintiff's civil rights.  He alleges that he "actually got COVID-19 by governmental deliberate indifference."  DN 87, p. 5.  Quijada-Castillo further evidences a lack of understanding of legal terminology and concepts, arguing that "As for the 'need to avoid unwarranted sentence disparities,' 18 U.S.C. § 3553(a)(6), the Court need look no further than this case.  Clearly, there is a marked, disparite [sic] difference between a sentence and one of identical length, but comes with COVID-19."  DN 87, p. 5.  In essence, he contends

that service of his sentence during the COVID-19 pandemic resulted in conditions of confinement to which he should not have been subjected.

Redress for perceived cruel and unusual punishment is not properly sought under the First Step Act's compassionate release provision, as the statute does not contemplate a reduction in sentence or release to compensate for past governmental actions. *See, ie. United States v.* Pooler, No. 3:18-cr-00137, 2020 WL 7046964 (S.D. Ohio Dec. 1, 2020)("to the extent that Pooler is arguing that his Motion should be granted due to the Eighth Amendment's prohibition on the infliction of cruel and unusual punishments…a compassionate release motion likewise is not the appropriate mechanism or vehicle to raise such a claim of alleged constitutional violations," collecting cases). The Court does not discount the defendant's statements that fear, isolation, and changes in lifestyle imposed to control the spread of the coronavirus in the prison resulted in mental and physical hardship for him. However, such allegations are not efficacious in seeking compassionate release under the First Step Act. Therefore, Quijada-Castillo's motion must be denied.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Victor Manuel Quijada-Castillo, for compassionate release (DN 87) is **DENIED.**

**IT IS SO ORDERED.**

May 13, 2021

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:    Counsel of Record
       Victor Manuel Quijada-Castillo
       Reg. #66691-061
       FCI Victorville II
       P.O. Box 3850
       Adelanto, CA  92301

7